UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

UNITED SUPPLY COMPANY,  1:17-cv-3256 (NLH)

      Appellant,  **OPINION**

  v.

RICHARD M. CRIVARO,

      Appellee.

---

**APPEARANCES**:

ANDREW R. TURNER
TURNER LAW FIRM, LLC
76 SOUTH ORANGE AVENUE
PO BOX 526
SOUTH ORANGE, NJ 07079
    On behalf of Appellant

RICHARD M. CRIVARO
4508 WAYLAND COURT
HIGH POINT, NC 27265
    Appearing pro se

**HILLMAN, District Judge**

    This appeal arises from the Bankruptcy Court's order and judgment in favor of Appellee Richard Crivaro ("Appellee" or "Crivaro"), which rejected Appellant United Supply Company's ("Appellant" or "United Supply") argument that its claim is not dischargeable under 11 U.S.C. § 523(a)(2). For the reasons that follow, the Court will affirm.

**I.**

As the Court owes deference to the factual findings of the Bankruptcy Court, the Court takes its facts from the Bankruptcy Court's April 24, 2017 opinion. RC Heating and Air Conditioning ("RC") sold and installed heating and air conditioning equipment to residential customers. As part of this enterprise, RC bought supplies from certain vendors, including United Supply. Crivaro owned and operated RC. In 2006, Crivaro executed a corporate Credit Application and Personal Guarantee to United Supply which stated, in part: "This is to certify that the undersigned is a principal in the above-named business. In consideration for the extension of credit by [United Supply] and its divisions and any affiliates the undersigned jointly and severally do personally guarantee payment of all monies owed." Throughout 2013 and 2014, RC fell overdue on payments. On June 9, 2014, RC filed a Chapter 11 petition, which was eventually converted to Chapter 7.

Crivaro made no payments to United Supply, maintaining that there was no personal guaranty. Consequently, United Supply filed a lawsuit in the Superior Court of New Jersey, Law Division ("Law Division"), which proceeded to trial. The Court briefly summarizes the Law Division's June 2, 2015 decision here. The issue before the Law Division was whether Crivaro

personally guaranteed the debt of $132,500.[1] The Law Division considered this issue in accordance with "the principles of contract law." The Law Division found a binding contract was created between United Supply and Crivaro and that there was "credible evidence [to] support[] the proposition that the document was intended to be Richard M. Crivaro's guaranty of the corporate debt of 'RC Heating' to [United Supply]."

In reaching this conclusion, the Law Division considered Crivaro's argument that "he signed the document only for the purpose of allowing 'RC Heating' to be qualified for and to be enabled to obtain more favorable 'dealer pricing'" and that he "did not believe the document to be an agreement to provide a guarantee of the monies owed by 'RC Heating.'" Crivaro argued before the Law Division that this was evidenced by his handwriting of "Pres" next to his signature on the agreement, his writing "N/A" on the line requesting his social security number, and his leaving the signature line for "Principle's Spouse" blank.

The Law Division relied on the fact that Crivaro "executed the document directly below the section that indicate[d] that it was being signed as a 'personal guarantee'" and that Crivaro "did not 'cross out' or 'redact' the language in the agreement

---

[1] This amount was stipulated between the parties in the Law Division.

which is a 'personal guaranty.'" The Law Division entered judgment for United Supply in the amount of $132,500.

On July 10, 2015, Crivaro filed his bankruptcy petition. United Supply's October 5, 2015 Adversary Complaint before the Bankruptcy Court alleged that United Supply's claim should be non-dischargeable under 11 U.S.C. § 523(a)(2)(A)-(B).[2] The Bankruptcy Court conducted a trial on September 14, 2016. The Court briefly summarizes the Bankruptcy Court's decision. The Bankruptcy Court first considered the findings of the Law Division:

> [T]he Debtor's previous testimony did not persuade the Superior Court. Rather, the Superior Court explicitly determined that the Debtor's testimony, which United Supply is now seeking to use against the Debtor, was not credible. The Superior Court found that the Debtor intended to enter into the Guaranty and to guarantee RC's debt to United Supply.

The Court determined that, "[i]n light of the Superior Court's factual determination of the Debtor's intent to guarantee RC's debt to United Supply, the doctrine of collateral estoppel appl[ied]":

> Because the Superior Court found that the Debtor

---

[2] As recognized by the Bankruptcy Court, United Supply's Complaint also pleaded for relief under 11 U.S.C. § 523(a)(6), for willful and malicious injury. The Court concluded that this claim was both waived and would not have been a meritorious basis for recovery. Also before the Bankruptcy Court was the matter of an allegedly fraudulent transfer of property. That issue is not directly before this Court and the extent to which it is relevant to the issue of intent to deceive is discussed below.

4

> did intend to personally guarantee RC's debt, the elements of fraud necessary to prove § 523(a)(2)(A) & (B) cannot be present here. Specifically, the Debtor did not make a fraudulent statement because he knew he was entering into the Guaranty, and intended to enter into the Guaranty, at the time he signed it, despite his later testimony to the contrary before the Superior Court and this Court.

(Pa10).

The Opinion below did not rest solely on the doctrine of collateral estoppel to determinate that Appellant had failed to prove its case of fraud. More specifically, the Court concluded that even it collateral estoppel did not apply, the result would be the same. After hearing the evidence in the case, the court made the following factual determination: "The Court finds that the Debtor knew he was agreeing to guarantee RC's debt to United Supply and that he intended to be bound by it at the time of signing." (Pa10). Relying on these alternative analyses, the Bankruptcy Court entered judgment in favor of Crivaro. United Supply filed this bankruptcy appeal on May 9, 2017.

**II.**

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under section 157 of this title." "An appeal under this subsection shall be taken

5

only to the district court for the judicial district in which the bankruptcy judge is serving." Id.

## III.

In reviewing a determination of the bankruptcy court, the district courts "review the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." Reconstituted Comm. of Unsecured Creditors of the United Healthcare Sys., Inc. v. State of N.J. Dep't of Labor (In re United Healthcare Sys.), 396 F.3d 247, 249 (3d Cir. 2005) (quoting Interface Grp.-Nev. v. TWA (In re TWA), 145 F.3d 124, 130-31 (3d Cir. 1998)).

## IV.

United Supply argues the Bankruptcy Court erred in applying collateral estoppel "because the causes of action before the Superior Court and Bankruptcy Court were different." It argues:

> The Superior Court did not rule on whether Defendant obtained credit under false pretenses. The issue before the Superior Court was whether a contract existed between Plaintiff and Defendant such that personal liability under the guaranty could be imposed. The Superior Court ruled favorably on Plaintiff's claim for damages against the Defendant.
> The separate issue before the Bankruptcy court was whether Defendant obtained credit under false pretenses such that the monies owed Plaintiff should be excepted from discharge. This is a distinct issue and cause of action which arose when the bankruptcy case was filed.

(citation omitted).

"The principle of collateral estoppel, which prohibits the

relitigation of issues that have been adjudicated in a prior lawsuit, applies in discharge proceedings in bankruptcy courts." Winograd v. Karpo (In re Karpo), No. 09-38892, Adv. No. 10-1132, 2011 Bankr. LEXIS 2881, at *10 (Bankr. D.N.J. July 22, 2011). "In order to determine the preclusive effect of a prior state court proceeding, a federal court looks to the law of the adjudicating state." Li v. Peng, 516 B.R. 26, 42 (D.N.J. 2014). Here, the Court looks to New Jersey law.

> New Jersey courts apply a five-pronged test to determine whether collateral estoppel should bar relitigation of an issue: (1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding.

Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002) (citing In re Estate of Dawson, 641 A.2d 1026, 1034-35 (1994)).

As a preliminary matter, the fact "that the State Court did not rule on any issues relating to the dischargeability in bankruptcy of [Debtor]'s liabilities" is "of no consequence for the Bankruptcy Court's decision." Li, 516 B.R. at 43.[3] Rather,

---

[3] United Supply's brief argues:

> The issues are distinct because an objection to discharge in bankruptcy does not arise as a cause of action unless and until a petition is filed. Thus, the

7

it is "the underlying factual issues" that are relevant in determining identity of issues. Id. at 42-43. Courts "should consider whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related." Id. at 42 (quoting First Union Nat'l Bank v. Penn Salem Marina, Inc., 921 A.2d 417 (N.J. 2007)). "The Third Circuit has held that '[t]o defeat a finding of identity of the issues for preclusion purposes, the differences in the applicable legal standard must be "substantial."'" Id. at 43 (quoting Raytech Corp. v. White, 54 F.3d 187, 191 (3d Cir. 1995)).

The issue before the Law Division was whether there was a meeting of the minds between United Supply and Crivaro such that the contract they entered into was a personal guaranty. The Law Division determined that there was such a meeting of the minds. However, the intent to enter into a guaranty agreement is not identical to the intent to adhere to that agreement at the time

---

Superior Court could not have made a determination on dischargeability since Defendant had not filed a petition in bankruptcy at that time.

(citation omitted). The Court rejects this argument.

8

the agreement is reached.  In other words, one can enter into an agreement fully intending to be bound by it at the time the contract is formed and have, at the time of the formation of the contract, the present intention to breach it sometime in the future.  The former describes an enforceable contract at law.  The latter describes, if other elements are met, an act of fraud.  Importantly, these determinations are not mutually exclusive.  The intent that is relevant in determining whether there has been a meeting of the minds is the "objective intent" that the contracting party "outwardly manifests to the other party.  It is immaterial that he or she has a different, secret intention from that outwardly manifested." Hagrish v. Olson, 603 A.2d 108, 110 (N.J. Super. Ct. App. Div. 1992).[4]

It is here then that we agree with the Appellant that at least in addressing the issue of collateral estoppel the Bankruptcy Court conflated the issue of intent to contract with the intent to deceive.  The Bankruptcy Court determined that "the issue of a valid guaranty was identical in both the Superior Court and [the Bankruptcy] Court."  However, that is not the only, or the focal, issue before the Bankruptcy Court.

---

[4] This standard was acknowledge and applied by the Law Division, which stated: "It is the intent expressed or apparent in the writing that controls." West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958); Friedman v. Tappan Development Corp., 22 N.J. 523, 531 (1956); Leitner v. Braen, 51 N.J. Super. 31, 38-39 (App. Div. 1958)." (Pa95).

The determination that the guaranty was valid in the Law Division is not dispositive of whether the debt should be discharged under 11 U.S.C. § 523(a)(2) – the issue before the Bankruptcy Court. The Court finds these issues distinct, and certainly not "identical" such that collateral estoppel should apply.

It appears to this Court that the Bankruptcy Court concluded that since the Law Division found an intent to enter into a personal guarantee the state court necessarily also found that Appellee lacked the intent to defraud. However, it is clear to this Court that the Law Division had no occasion to address the latter issue as the sole issue before the court was whether a contract had been entered into. Far from undermining a finding of fraud, the finding of a valid contract supports such a finding, at least in part. To prove fraud the Appellant would have to prove: a) the Appellee entered into the personal guarantee; b) with the intent to create the false impression that he intended to be bound by it. The state court merely answered the first question without addressing whether the contract was part and parcel of a scheme to deceive. The Court finds, therefore, that collateral estoppel was applied in error.[5]

---

[5] Typically, the application of collateral estoppel is a question of law. See, e.g., Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 248 (3d Cir. 2006). While under certain circumstances reviewed for an abuse of discretion,

However, as noted above, the Bankruptcy Court offered an alternative basis for its conclusion that Appellant had failed to prove a case of fraud, a conclusion independent of the doctrine of collateral estoppel:

> Even if the Superior Court's decision did not bind this Court under collateral estoppel, the Court reaches the same conclusion. The Debtor's testimony regarding the Guaranty was not credible. The Debtor claimed to not willingly enter into the personal Guaranty of RC's debt to United Supply, but the documents presented as evidence refute the Debtor's testimony. The Court finds that the Debtor knew he was agreeing to guarantee RC's debt to United Supply <u>and that he intended to be bound by it at the time of signing</u>.

(Pa10) (emphasis added). The Court now considers whether that independent factual determination was made in error.

11 U.S.C. § 523(a)(2) provides, in pertinent part:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

   . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

   (B) use of a statement in writing –

---

the Court concludes that even under this more deferential standard, collateral estoppel was applied in error.

> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive . . . .

"The burden of proving that a debt is nondischargeable under § 523(a) is upon the creditor, who must establish entitlement to an exception by a preponderance of the evidence." <u>Ins. Co. of N. Am. v. Cohn (In re Cohn)</u>, 54 F.3d 1108, 1114 (3d Cir. 1995). In order to state a claim under § 523(a)(2)(A), the following elements must be established:

> "(1) the Debtor obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; (4) the Plaintiff reasonably relied on the representation; and (5) the Plaintiff suffered loss, which was proximately caused by the Debtor's conduct."

<u>Lewandowski v. Moeller (In re Moeller)</u>, No. 09-17417, Adv. No. 11-1008, 2014 Bankr. LEXIS 1236, at *16 (Bankr. D.N.J. Mar. 31, 2014) (quoting <u>De La Cruz v. Cohen (In re Cohen)</u>, 185 B.R. 180, 186 (Bankr. D.N.J. 1995), <u>aff'd</u> 191 B.R. 599 (D.N.J. 1996),

aff'd, 106 F.3d 52 (3d Cir. 1997)).[6]

The factual finding of the Bankruptcy Court as to the subjective intent of the Appellee at the time he signed the legally binding guarantee goes primarily to the second and third elements of Appellant's fraud claim.[7] "The second and third elements require a plaintiff to prove that the defendant knew of the false nature of his statements and that he made them with an intent to mislead or deceive his potential lender." Id. at *19-20. "Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made." Id. (quoting Nicholson v. Nicolai (In re Nicolai), No. 05-29876,

---

[6] Elements four and five are easily satisfied. As to reasonable reliance by United Supply, Fred Tamberelli, the President of United Supply, testified before the Bankruptcy Court that United Supply relied on the guarantee executed by Crivaro. (Pa301, Pa303). As to loss by United Supply, the parties stipulated to a $132,500 loss.

[7] The first element requires a material misrepresentation. "[W]ords, both written and oral; conduct; and even omissions may all be found to constitute a material misrepresentation for the purposes of § 523(a)(2)(A)." Mehta v. Stein (In re Hilton L. Stein, LLC), No. 02-36276, Adv. No. 02-4013, 2011 Bankr. LEXIS 1327, at *19 (Bankr. D.N.J. Apr. 4, 2011) (quoting Shaw v. Santos (In re Santos), 304 B.R. 639, 661 (Bankr. D.N.J. 2004)). "Whether through affirmative conduct or omission, such misrepresentations must constitute 'an important or substantial untruth' that touches 'upon the essence of the transaction.'" Id. (quoting Shaw, 304 B.R. at 662). The first three elements are interrelated in that a finding of an intent to deceive would aid in proving a material misrepresentation. Conversely, a lack of an intent to receive is inconsistent with a finding of a misrepresentation. Finding a lack of proof as to element three, we need not address whether Appellant had sufficient evidence as to the first element.

13

Adv. No. 05-2751, 2007 Bankr. LEXIS 339, at *8 (Bankr. D.N.J. Jan. 31, 2007)). "[D]irect proof of intent is nearly impossible to attain, and as such, the creditor may proffer evidence regarding the surrounding circumstances from which intent can be inferred." JPMorgan Chase Bank, N.A. v. Pandolfelli, No. 09-18941, Adv. No. 09-2068, 2011 Bankr. LEXIS 2658, at *9 (Bankr. D.N.J. July 11, 2011). Accordingly, "knowledge of the falsity and intent not to repay, or intent to deceive, may be inferred from the 'totality of the circumstances.'" Mehta, 2011 Bankr. LEXIS 1327, at *18 (quoting Nicholson, 2007 Bankr. LEXIS 339, at *8). "The appropriate standard for both elements is 'gross recklessness.'" Id. at *20 (quoting Cohen, 191 B.R. at 605).

In this matter, the Bankruptcy Court clearly articulated its finding that Appellee entered into the personal guarantee with the intent to be bound by it at the time he signed the guarantee. Such a finding is inconsistent with a finding of fraud. In fact, a finding of fraud requires the opposite conclusion – that Appellee entered into the personal guarantee intending not to be bound by it at the time he signed it but rather to create the false impression of such intent for the purpose of inducing an extension of credit.

The Court reviews the Bankruptcy Court's factual determinations for clear error. Reconstituted Comm. of Unsecured Creditors, 396 F.3d at 249. Applying that deferential

14

standard, this Court is unable to find clear error.  Deference to the Bankruptcy Court is "particularly appropriate on the intent issue" since this determination "depends largely upon an assessment of the credibility and demeanor of the debtor." Pandolfelli, 2011 Bankr. LEXIS 2658, at *9 (quoting Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997)).  Here, the Bankruptcy Court heard the relevant testimony and assessed credibility and subjective intent.  There is insufficient evidence in the record to overturn that determination.

This Court recognizes the potential irony in this result. Neither the Law Division nor the Bankruptcy Court, both of which observed Appellee at trial, found him credible.  As the Bankruptcy Court stated: "The Debtor claimed to not willingly enter into the personal Guaranty of RC's debt to United Supply, but the documents presented as evidence refute the Debtor's testimony."  On the surface, it would appear then that his untruthful testimony aided the Court in determining that no fraud occurred in that in rejecting his testimony the Bankruptcy Court found lacking the necessary element of intent to deceive.

However, this argument proves too much.  There are really three alternative scenarios at play here: 1) Appellee lacked the subjective intent to personally guarantee his company's debt – as he insisted in both courts; 2) he had the subjective intent to personally guarantee his company's debt and perfected such a

15

guarantee as a matter of contract law; and 3) lacking the subjective intent to ever guarantee his company's debt he knowingly or recklessly entered into a legally binding guarantee with the intent to fraudulently induce an extension of credit.

Simply rejecting Appellee's testimony as to Scenario #1 and finding Scenario #2, as the state court did, is a necessary predicate, but, standing alone, insufficient to find Scenario #3. Absent some other evidence of fraudulent intent,[8] this Court is unable to find that the Bankruptcy Court's conclusion that Appellant failed to prove Scenario #3 – i.e., Appellee had the intent to deceive at the time he entered into the guarantee – was clear error.

Based on its independent determination that Appellee lacked an intent to deceive, a required element of fraud, the Bankruptcy Court correctly entered judgment in favor or Appellee rejecting Appellant's claim that Appellee's debt should not be discharged pursuant to 11 U.S.C. § 523(a)(2)(A). Accordingly,

---

[8] In addition to the argument, which this Court rejects, that proof of what this Court calls Scenario #2 necessarily proves Scenario #3, Appellant points to Appellee's 2013 transfer of real property for nominal value to his children as evidence of fraudulent intent. These events post-date the execution of the personal guarantee in 2006 and are of limited probity as to his intent in executing that contract seven years earlier. More importantly, the Bankruptcy Court fully considered the allegations concerning Appellee's real estate transactions and rejected a claim that those transfers were fraudulent. We have no reason to disturb those findings of the Bankruptcy Court.

16

the Bankruptcy Court's April 24, 2017 order will be affirmed.

An appropriate Order will be entered.


Date: April 2, 2018      s/ Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.